IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 7:17-cr-0011-1 |
| | ) |
| v. | ) |
| | ) |
| | ) |
| BRIAN DOMINIQUE MUSE, | ) By:  Michael F. Urbanski |
| | ) Chief United States District Judge |
| Petitioner | ) |

## MEMORANDUM OPINION

Brian Dominique Muse, a federal inmate currently serving an 87-month sentence for drug and firearm offenses, has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 70. On September 9, 2019, the United States filed a motion to dismiss to which Muse responded on September 27, 2019. ECF Nos. 88, 93. For the reasons set forth below, the court **DENIES** the government's motion to dismiss and sets this case for an evidentiary hearing.

I.

On February 2, 2017, Muse was indicted on charges of possession with intent to distribute a mixture containing a detectable amount of heroin (Count One); possession with intent to distribute a mixture containing a detectable amount of cocaine (Count Two); possession with intent to distribute a mixture containing a detectable amount of cocaine base (Count Three), all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four). ECF No. 3. On May 30, 2017, Muse entered into a written plea agreement in which he

agreed to plead guilty to Counts One and Four of the indictment. Counts Two and Three would be dismissed. Plea Agreement, ECF No. 41 at 1-3.

Muse faced maximum statutory sentences of 20 years on Count One and life on Count Four, with a mandatory consecutive minimum sentence of 5 years on Count Four. Id. at 1-2. According to the Presentence Investigation Report ("PSR"), based on the Plea Agreement which garnered Muse a 3-level reduction for acceptance of responsibility, his guidelines range on Count One was 57 to 71 months, and on Count Four, the minimum term of imprisonment imposed by statute, which was 60 months. Thus, his guidelines sentencing range was 117 to 131 months under the Plea Agreement. PSR, ECF No. 61 at 30. Without the Plea Agreement and the reduction for acceptance of responsibility, his sentencing range on Count One would have been 77 to 96 months, making his total guidelines sentencing range 137 to 156 months. Id.

As part of the agreement, Muse waived his right to file a direct appeal, except as to any issue which could not be waived by law. Plea Agreement, ECF No. 41 at 8-9. The waiver of appeal contained the following language:

> I agree and understand if I file any court document (except for an appeal based on an issue that cannot be waived by law, or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any way, any order imposed in my case such action shall constitute a failure to comply with a provision of this agreement.

Id. at 9. In addition, Muse waived his right to collaterally attack any order issued in his case, except for making a claim of ineffective assistance of counsel. Id. at 9. Muse entered a guilty plea to Counts One and Four on May 30, 2017. ECF Nos. 40, 42.

2

At a sentencing hearing held on October 25, 2017, Muse was sentenced to 27 months on Count One and 60 months on Count Four, for a total of 87 months, to be followed by a 3-year term of supervised release. Jmt., ECF No. 58 at 2-3. The court departed downward from the guidelines sentencing range based on Muse's substantial assistance under U.S.S.G. 5K1.1. Sent. Hr'g Tr., ECF No. 84 at 15. No notice of appeal was filed. On November 22, 2017, an amended judgment was entered for the purpose of correcting the spelling of Muse's middle name. ECF No. 62 at 1.

Muse filed this § 2255 motion on June 26, 2019 and argues that his attorney provided ineffective assistance of counsel because he failed to file an appeal even though Muse directed him to do so. ECF No. 70. In its motion to dismiss, the government argues that Muse's motion is time-barred, and also that he never asked his attorney to file a notice of appeal on his behalf. ECF No. 88.

## II.

### A.  28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If a petitioner alleges a sentencing error that is neither constitutional nor jurisdictional, "a district court lacks authority to review it unless it amounts to a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Foote, 784 F.3d 931, 936 (4th Cir. 2015) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)).

A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

## B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689. In the context of failure to file a notice of appeal, the Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). This is true even when a defendant has waived the right to appeal as part of a plea agreement. Garza v. Idaho, 139 S.Ct. 738, 747 (2019); United States v. Poindexter, 492 F.3d 263, 273 (2007).

4

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. However, "when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit." Peguero v. United States, 526 U.S. 23, 28 (1999) (citing Rodriquez v. United States, 395 U.S. 327, 329-330 (1969)).

### C. Timeliness of Petition

Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year statute of limitations set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Muse's conviction became final on November 10, 2017, which was fourteen days after the court entered judgment in his case. See Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. Crim. P. 4(1)(A). Using that date as the starting point, the one-year limitations period

for filing his § 2255 motion expired on November 10, 2018. Because he did not file his motion until June 26, 2019, it is time-barred under § 2255(f)(1).

Muse asserts that he did not surmise that his attorney had not filed an appeal on his behalf until on or about July 26, 2018, when he began to write to the court for help with perfecting his appeal. Petitioner's Memorandum., ECF No. 70-1 at 1. Therefore, he argues that § 2255(f)(4) should apply to his case and that the statute of limitations did not begin to run until July 26, 2018, making his June 26, 2019 motion timely.

"'Section 2255(f)(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run." Hannigan v. United States, 131 F.Supp.3d 480, 487-488 (E.D.N.C. 2015) (quoting Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000)). "Instead, section 2255(f)(4) 'resets the limitations period's beginning date, moving it from the time when the conviction became final, to the later date on which the particular claim accrued.'" Id. at 488 (citing Wims, 225 F.3d at 190). "Section 2255(f)(4) begins the limitation period 'when the facts could have been discovered through the exercise of due diligence, not when they were actually discovered.'" Id. (citing Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002)).

The test under Section 2255(f)(4) is an objective test, requiring that the court determine when a duly diligent person in the petitioner's circumstances would have discovered that his attorney had not filed a notice of appeal on his behalf. Id. (citing Wims, 225 F.3d at 186). Although the test is objective, the due diligence inquiry is individualized. The court looks at "the prisoner's conditions of confinement, a prisoner's ability to communicate with court and

6

counsel, and communications between the prisoner and the prisoner's counsel and between the prisoner and the court." Id. Due diligence does not require maximum feasible diligence, but only reasonable diligence. A petitioner need not exhaust every imaginable option but should make reasonable efforts. United States v. Longshore, 644 F.Supp.2d 658, 661 (D. Md. 2009) (citing Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) and Wims, 225 F.3d at 190 n. 4).

A defendant who instructs counsel to file a notice of appeal reasonably relies upon counsel to file the notice. Flores-Ortega, 528 U.S. at 477. The inquiry into whether a petitioner exercised due diligence to discover that his attorney did not file an appeal is fact specific. The Wims court found that a five-month delay between the failure to file an appeal and discovery of the failure is not "clearly unreasonable." Wims, 225 F.3d at 191. See also Granger v. Hunt, 90 F. App'x 97, 100 (6th Cir. 2004) (waiting two months before inquiring about an appeal was not unreasonable). In contrast, the Eighth Circuit Court of Appeals found that a petitioner who waited a year to contact his attorney regarding his appeal did not use reasonable diligence to discover the facts underlying his claim and affirmed the district court's decision to dismiss his § 2255 petition as time-barred. Anjulo-Lopez v. United States, 541 F.3d 814, 819 (8th Cir. 2008). See also Montenegro v. United States, 248 F.3d 585, 588, 593 (7th Cir. 2001) overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir. 2001) (finding that a petitioner who waited twenty-two months after his conviction and sentence became final to file his § 2255 motion alleging ineffective assistance of counsel did not act diligently when, six months after he was sentenced he had obtained a docket sheet showing that an appeal in his case had not been filed); Hannigan, 131 F.Supp.3d at 491 (concluding that petitioner who

waited three years to file petition did not act diligently to discover whether attorney had filed appeal).

Muse filed his § 2255 on June 26, 2019. The question for the court to determine is whether exercising due diligence, he should have discovered prior to June 26, 2018 that his attorney did not file an appeal.

At Muse's sentencing hearing on October 27, 2017, the court advised Muse of the following:

> Mr. Muse has waived his right to appeal his sentence and that waiver is binding unless the sentence exceeds the statutory maximum or is based on a constitutionally impermissible factor. If he does undertake to appeal despite his waiver, he may lose the benefits of his plea agreement.
>
> If a right of appeal does exist, a person who is unable to pay the cost of an appeal may apply for leave to appeal without prepayment of such cost. Any notice of appeal must be filed within 14 days of the entry of judgment or 14 days of a notice of appeal by the government. If requested, the clerk will prepare and file a notice of appeal on behalf of the defendant.

Sent. Hr'g Tr., ECF No. 84 at 18-19.

In a declaration attached to his § 2255 petition, Muse stated that after he was sentenced in October 2017, his attorney, Stuart Pearson, visited him at the Western Virginia Regional Jail and informed him of his appeal rights. Although Pearson advised Muse against appealing, Muse instructed Pearson to do so, and Pearson "walked out of the meeting." Decl. of Brian Muse, ECF No. 70-2. The next day, Pearson and Muse had a video conference, and Muse again asked Pearson to file a notice of appeal, and Pearson agreed to do so. Id.

Approximately nine months later, on July 26, 2018, the Clerk's office received a letter from Muse dated July 11, 2018, ECF No. 65, requesting assistance in filing a §2255 motion. He stated, "I have several reasons for taking this motion because I asked [my attorney] to

8

appeal the guidelines in my pre-sentence report because there were a lot of errors in my pre-sentence report and I haven't heard anything from him about it yet." Id. at 1. He also stated in the letter that his "points" were not properly calculated and when he asked his attorney to fix it, the attorney "walked out on [him.]" Id. at 2. He further stated that he was unjustly sentenced due to the miscalculation of the points and that his lawyer "failed to address the issue." Id. The statements in the July 2018 letter indicate that, at the very least, Muse was questioning whether his attorney had filed the appeal. The clerk's office sent Muse a blank § 2255 form.

On September 12, 2018, the Clerk's office received another letter from Muse in which he stated, "I am writing the courts to find out why I asked my lawyer to appeal my conviction and I never heard back from him and every time I try to reach out to him he never responds. . . . I was sent [a] 2255 form by the courts last time I wrote the courts and it does me no good because I don't know how to go about filling it out 'legibly' and if I do anything wrong I won't get a second chance and I clearly need assistance and can't get [it] up here so I am asking to get some kind of help with it." ECF No. 66 at 4. He further stated, "I asked my lawyer to appeal the fact that my PSR was full of errors and he walked out on me, and then did a video visit two days later to tell me he didn't think I could do it, but he would and I would like to know if an appeal was ever filed on my behalf. I have a deadline to file this 2255 form, so I need this done in a timely fashion." Id. at 2-3.

The clerk's office responded by mailing Muse a copy of the docket sheet in his case and advising him that the clerk's office is not permitted to provide legal information. ECF No. 67. The docket sheet contained no indication that an appeal had been filed.

On April 12, 2019, Muse wrote another letter to the court, asking for copies of letters he had sent the court and his docket sheet. He said that he had contacted the appeals court, the public defender's office, and his own attorney and had received no response from any of them. He stated that four days after he was sentenced, he asked his attorney to file an appeal on his behalf but did not hear from him, even though he had written him several letters. He concluded by saying that only after the court sent him a copy of his letter asking what was happening with his appeal did the attorney respond to him. Letter of April 12, 2019. ECF No. 68. The clerk's office replied to him the same day, telling him that he was being sent a docket sheet from his case, but would need to specify what documents he wanted and pay for copies. ECF No. 69.

The government attached an affidavit from attorney Pearson to its motion to dismiss. In the affidavit, Pearson states the following:

> I met with Brian Muse via telephone from the Roanoke County jail on October 30, 2017. Mr. Muse asked me about an appeal. We discussed the fact that he waived the right to appeal, that any appeal may jeopardize any benefits received at sentencing and that an appeal was not a get out of jail free card. After this discussion, he did not direct me to appeal. I instructed him to contact the Clerk if he wanted to note an appeal. Upon returning to my office after the phone call, I drafted a memo to my file outlining the substance of our conversation.

Aff. of Stuart J. Pearson, ECF No. 88-1. Pearson included notes to his file dated October 30, 2017, that reflect what he said in his affidavit regarding Muse's questions about his right to appeal and also his right to collaterally attack his conviction or sentence. Pearson stated that he made sure Muse understood that filing an appeal or collateral attack "would jeopardize the 5k he received." Memorandum, ECF No. 88-2.

Also included with the government's motion was a copy of a letter dated December 8, 2017 from Pearson addressed to Muse at the federal penitentiary in Inez, Kentucky. The letter appears to be a response to an inquiry by Muse about whether he had any pending charges. Pearson stated that he had checked municipal and state court websites and had not discovered any pending charges. The letter makes no mention of an appeal. However, the letter was returned to Pearson by the prison with a notation that the addressee, Muse, could not be identified. Letter of Dec. 8, 2017, ECF No. 88-3.

The government included another letter from Muse to Pearson, dated December 10, 2018, in which Muse asked Pearson to contact him at his institution. He stated, "I have something important to talk to you about. I have written you several letters and you haven't responded to any." Letter of Dec. 10, 2018, ECF No. 88-4.

Muse attached to his § 2255 motion a letter he received from Pearson dated January 8, 2019, stating that Pearson had received Muse's "most recent letter" and was trying to respond to him via telephone. Pearson added that he had tried to respond to two of Muse's prior letters, but the letters were returned to him. Letter of Jan. 8, 2019, ECF No. 70-2.

In Muse's response to the government's motion to dismiss, he states that after he told Pearson that he wanted to appeal, Pearson said he would file the appeal and it would take several months and Muse agreed. After that, Muse and his mother both tried to call Pearson's office, but Pearson would not take their calls. Muse also stated that he wrote to the Court of Appeals but never received a response, so started trying to figure out how to file a § 2255 motion. Resp., ECF No. 93 at 3.

Looking at the facts in the light most favorable to Muse, the court will assume that he asked Pearson to file an appeal in his case in October 2017. The court will further assume that Muse wrote his attorney at least three letters, one written prior to December 2017 which did not mention an appeal, the second whose date and subject are unknown, and the third sent in December 2018 in which he did not mention an appeal, but asked Pearson to contact to him. Pearson responded to the letters, but for reasons which are unclear, Muse did not receive the first two responses.

The record indicates that Muse suspected prior to July 26, 2018 that his attorney had not filed an appeal on his behalf and knew no later than September 2018, when the clerk's office sent him a copy of the docket sheet in his case, that an appeal had not been filed. See Greer v. United States, No. 5:14-CR-00202, 2019 WL 7559790, at *8 (S.D.W.V. 2019) (finding that petitioner had notice that attorney had not filed an appeal when he received docket sheet showing that, other than the filing of the PSR, nothing had occurred in case between entry of judgment and execution of judgment).

The government argues that the fact that an appeal had not been filed is simply a "matter of public record, which reasonable diligence could have unearthed," and cites in support Yancy v. United States, No. 7:04CR00139, 2009 WL 1546288 (W.D. Va. 2009) and Hairston v. United States, No. 4:05cr00022-1, 2008 WL 4809165 (W.D. Va. 2008) (both quoting Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2000)). However, in Yancy, the petitioner waited three years after he asked his attorney to file a direct appeal to file his § 2255 motion and during that time wrote his attorney six letters, all asking for information about his appeal to which he received no reply. Yancy, 2009 WL 1546288 at *3. The court found that it was

12

unreasonable for Yancy to have waited three years given his concerns about the appeal. "Under these circumstances, an exercise of reasonable diligence would have led Yancy to, sometime prior to [the one-year period before he filed his motion] take additional steps—such as contacting the clerk's office—to determine whether an appeal had actually been filed." Id.

Muse's case is factually distinguishable from Yancy, because Muse didn't wait three years to determine whether an appeal had been filed. Eight months after he alleges that he directed his attorney to file an appeal on his behalf, he contacted the court seeking information about whether an appeal had been filed. During the time between his sentencing and the filing of his § 2255, he sent his attorney at least three letters, although the content of the first two letters is unknown. Six months after receiving no response to his last letter, he filed his § 2255 motion.

In Hairston, following an evidentiary hearing, the court found that a petitioner failed to take any steps for nine months after he alleged he told his attorney to file an appeal, and if he had any doubt as to whether an appeal had been filed, "due diligence requires that he have contacted his counsel and/or requested a copy of the docket with all reasonable speed." Hairston, 2008 WL 4809165 at *6. In Muse's case, in the first nine months after he was sentenced, he was at least attempting to communicate with his attorney without receiving a response, albeit with no indication in the record that he wrote his attorney a letter asking whether an appeal had been filed.

Because it is unclear what steps Muse took between November 2017 and June 26, 2018 to find out if his attorney had filed an appeal, the court cannot determine whether he acted with due diligence. Accordingly, the court finds it necessary to hold an evidentiary hearing to

13

determine whether Muse acted diligently to find out prior to June 26, 2018 if his attorney had filed an appeal on his behalf. At the hearing, the court will also hear evidence about whether Muse asked his attorney to file an appeal because Muse and his attorney have different recollections of what happened at their last meeting with regard Muse's request to file an appeal.

### III.

Based on the foregoing, the court **DENIES** the government's motion to dismiss, ECF No. 88, and will set this matter for an evidentiary hearing.

An appropriate Order will be entered.

Entered: April 27, 2020

Michael F. Urbanski
Chief United States District Judge