IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 7:17-cr-0011-1 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| BRIAN DOMINIQUE MUSE, | ) | By:  Michael F. Urbanski |
| | ) | Chief United States District Judge |
| Petitioner | ) | |

## MEMORANDUM OPINION

On June 17, 2019, Brian Dominique Muse, a federal inmate currently serving an 87-month sentence for drug and firearm offenses, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 70.[1] On September 9, 2019, the United States filed a motion to dismiss to which Muse responded on September 27, 2019. ECF Nos. 88, 93. The motion to dismiss was denied and an evidentiary hearing was set. Following the hearing, Muse submitted a supplemental brief to which the government responded. ECF Nos. 134, 136. For the reasons set forth below, the court **GRANTS** Muse's motion for relief and **ORDERS** that he be allowed to file a belated notice of appeal from his criminal judgment.

## I.

On February 2, 2017, Muse was indicted on charges of possession with intent to distribute a mixture containing a detectable amount of heroin (Count One); possession with

---

[1] Under the "prison mailbox rule," a motion for relief is deemed filed upon delivery to prison mailroom officials. Houston v. Lack, 487 U.S. 266, 270-272 (1988). Muse stated under penalty of perjury that he placed his § 2255 motion in the prison mailing system on June 17, 2019. Mot., ECF No. 70 at 12.

intent to distribute a mixture containing a detectable amount of cocaine (Count Two); possession with intent to distribute a mixture containing a detectable amount of cocaine base (Count Three), all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four). ECF No. 3. On May 30, 2017, Muse entered into a written plea agreement in which he agreed to plead guilty to Counts One and Four of the indictment. Counts Two and Three would be dismissed. Plea Agreement, ECF No. 41 at 1-3.

Muse faced maximum statutory sentences of 20 years on Count One and life on Count Four, with a mandatory consecutive minimum sentence of 5 years on Count Four. Id. at 1-2. According to the Presentence Investigation Report (PSR), based on the Plea Agreement which garnered Muse a 3-level reduction for acceptance of responsibility, his United States Sentencing Guidelines range on Count One was 57 to 71 months. On Count Four, the guidelines range was 60 months, the minimum term of imprisonment imposed by statute. PSR, ECF No. 61 at 30. Thus, his guidelines sentencing range was 117 to 131 months under the Plea Agreement. Without the Plea Agreement and the reduction for acceptance of responsibility, his sentencing range on Count One would have been 77 to 96 months, making his total guidelines sentencing range 137 to 156 months. Id.

As part of the agreement, Muse waived his right to file a direct appeal, except as to any issue which could not be waived by law. Plea Agreement, ECF No. 41 at 8-9. Muse entered a guilty plea to Counts One and Four on May 30, 2017. ECF Nos. 40, 42.

At a sentencing hearing held on October 25, 2017, Muse was sentenced to 27 months on Count One and 60 months on Count Four, for a total of 87 months, to be followed by a

3-year term of supervised release. J., ECF No. 58 at 2-3. The court departed downward from the guidelines sentencing range based on Muse's substantial assistance under USSG § 5K1.1. Sent. Hr'g Tr., ECF No. 84 at 15. No notice of appeal was filed. On November 22, 2017, an amended judgment was entered for the purpose of correcting the spelling of Muse's middle name. ECF No. 62 at 1.

Muse filed this § 2255 motion on June 26, 2019 and argues that his attorney provided ineffective assistance of counsel because he failed to file an appeal even though Muse directed him to do so. ECF No. 70. The government argues that Muse's motion is time-barred, and also that he never asked his attorney to file a notice of appeal on his behalf. ECF No. 136.

## II.

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was

not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). "The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'" Gray, 529 F.3d at 228 (quoting Strickland, 466 U.S. at 688). The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689. In the context of failure to file a notice of appeal, the Supreme Court has long held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). This is true even when a defendant has waived the right to appeal as part of a plea agreement. Garza v. Idaho, 139 S.Ct. 738, 747 (2019); United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007).

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. However, "when counsel fails to file a requested appeal, a defendant is entitled to an appeal without showing that his appeal would likely have had merit." Peguero v. United States, 526 U.S. 23, 28 (1999) (citing Rodriquez v. United States, 395 U.S. 327, 329-330 (1969)).

4

## C. Timeliness of Petition

Petitioners seeking relief under 18 U.S.C. § 2255 must file within the one-year statute of limitations set out in the statute. The period begins to run from the latest of (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Muse's conviction became final on November 10, 2017, which was fourteen days after the court entered judgment in his case. See Clay v. United States, 537 U.S. 522, 532 (2003); Fed. R. Crim. P. 4(1)(A). Using that date as the starting point, the one-year limitations period for filing his § 2255 motion expired on November 10, 2018. Because he did not file his motion until June 17, 2019, it is time-barred under § 2255(f)(1).

Muse asserts that he did not surmise that his attorney had not filed an appeal on his behalf until on or about July 26, 2018, when he began to write to the court for help with perfecting his appeal. Pet'r's Mem., ECF No. 70-1 at 1. Therefore, he argues that § 2255(f)(4) should apply to his case and that the statute of limitations did not begin to run until July 26, 2018, making his June 17, 2019 motion timely.

5

"'Section 2255(f)(4) is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run." Hannigan v. United States, 131 F.Supp.3d 480, 487-488 (E.D.N.C. 2015) (quoting Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000)).[2] "Instead, section 2255(f)(4) 'resets the limitations period's beginning date, moving it from the time when the conviction became final, to the later date on which the particular claim accrued.'" Id. at 488 (citing Wims, 225 F.3d at 190). "Section 2255(f)(4) begins the limitation period 'when the facts could have been discovered through the exercise of due diligence, not when they were actually discovered.'" Id. (citing Aron v. United States, 291 F.3d 708, 711 (11th Cir. 2002)).

Muse filed his § 2255 on June 26, 2019, approximately seven months after the one-year deadline expired. The questions for the court to determine are (1) whether Muse asked his attorney to file an appeal and if so, (2) whether Muse exercised due diligence during the approximately eight months from the time he claims he told his attorney to file the appeal until the time he surmised that his attorney had not done so.[3]

---

[2] However, a federal court may equitably toll the one-year deadline in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party" seeking a § 2255 relief. United States v. Aigbekàen, Crim. No. JKB-15-0462, 2021 WL 1816967, at *1 (D. Md. May 6, 2021) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). Equitable tolling of petitions for collateral review is available only when a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Muse did not seek equitable tolling in this case.
[3] Muse also argues that letters he sent to the court in July and September 2018 should be construed as timely motions for relief under § 2255. Because the court finds that the § 2255 motion he submitted in June 2019 was timely, it does not address this argument.

## III.

Muse and his attorney, Stuart Pearson, both testified at the evidentiary hearing and gave different versions of what transpired between them in the days after Muse was sentenced.

### A. Muse's Testimony

Muse testified that Pearson visited him in jail a few days after he was sentenced. Muse told Pearson that there were a couple of items in his PSR, described as inconsistencies and mistakes, that he wanted Pearson to "argue about for [him] . . . ." Evid. Hr'g Tr., ECF No. 112 at 5-6. Muse testified that Pearson did not appear to want to file an appeal on his behalf and walked out of their meeting. Id. at 6. Muse asked a guard to call Pearson back, but Pearson did not return. Id. Later, Muse asked his mother to call Pearson on his behalf and she and several other people called on his behalf but Pearson did not return their calls. Id. at 7.

A few days later, Pearson contacted Muse for a video visit, and Muse asked him if he was going to file the appeal. Pearson responded that an appeal was not a "get out of jail free card." Id. at 8. Muse understood that filing an appeal did not mean that he was going to be found not guilty or be absolved of the charges entirely, but he believed that mistakes were made in the PSR that improperly increased his sentence under the United States Sentencing Guidelines. For example, Muse testified that his PSR stated inconsistently that he had known a man for two years but had dealt with him for ten years. Muse also disputed the quantity of drugs that he was said to have bought from the man.[4] Id. at 9. He stated that the PSR portrayed him as a drug dealer when he was only a user. Id. at 10.

---

[4] The PSR states, "According to the investigation, Muse stated in his interview with investigators on April 19, 2016, that he had known Richardson for seven to eight years, but Muse had been purchasing heroin on and off from Richardson for approximately 10 years. Muse said he had previously purchased approximately one

Muse testified that Pearson responded to his request by telling him that if he appealed he would lose the reduction he received based on USSG § 5K1.1 and that the government could file a superseding indictment. Id. Muse stated that he did not believe the government would file a superseding indictment because he "knew they would have [come] with everything they had in the first place." Id. at 11. Muse testified that he clearly stated to Pearson that he wanted him to file an appeal and he believed that Pearson was going to file a notice of appeal on his behalf. Id. at 11, 50.

Muse further testified that after he was transferred to USP Big Sandy he was placed in segregation from approximately January 2018 through May 2018. Id. at 36. He said that he was allowed to write letters during that time, and that he did write to Pearson about his appeal, but that he no longer had copies of the letters he sent because they were lost when he was transferred to another unit. Id. at 33-34.[5] At some point he also wrote to the court of appeals to inquire about the appeal but received no response. Id. at 14. He was transferred to FCI Beckley in the spring or summer of 2018, which is when he wrote to the district court and asked for assistance in filing a § 2255 motion. Id. at 37. When asked why he did not write to the district court earlier to ask whether an appeal had been filed, he responded that he was giving Pearson time because Pearson had told him that an appeal would take months. Id. at 43.

---

to two bundles of heroin and up to three or four bricks of heroin on a weekly basis from Richardson. Muse further stated he was fronted approximately 3.5 grams of methamphetamine one time from Richardson." PSR at ¶ 10; ECF No. 61 at 6.

[5] The government calls into question whether copies of letters were lost in transit, implying that Muse lied about writing the letters, but Muse's testimony that his copies were lost is not contradicted by anything in the record.

**B. Pearson's Testimony**

Pearson testified that he had handled criminal cases from approximately 2002 until 2018. Id. at 54. Muse's case was the last federal criminal case he handled. Id. at 71.

Regarding the sequence of events related to the appeal, Pearson testified that while he did walk out of a meeting with Muse, he did so on August 3, 2017, prior to sentencing, when they were discussing Muse's PSR. Id. at 57. Muse was upset because the drug weight calculation in the PSR was higher than either Muse or Pearson expected it to be. Id.

After sentencing, Pearson returned to his office to write his closing letter to Muse. In the letter, dated October 27, 2017, two days after Muse was sentenced, Pearson told Muse that he was closing his file and would take no further action on his behalf. Letter of Oct. 27, 2017, ECF No. 88-2. Pearson wrote the closeout letter telling Muse he would take no further action on his behalf without having asked Muse if he wanted to file a notice of appeal. Evid. Hr'g Tr., ECF No. 112 at 74.

On October 30, 2017, Pearson saw Muse via video conference at the city jail to see if he had any questions. Pearson testified that "somebody may have left him a message" that prompted him to go see Muse. Id. Pearson had already submitted his time sheet for the work he had done on Muse's case and was not going to submit a bill for the visit. Id.

Muse had questions about programs offered by the BOP and also asked about his right to appeal. Pearson told Muse that he had signed a waiver of appeal as part of his plea agreement and also told him that filing an appeal does not "get you out of jail." Id. at 60. Muse did not ask Pearson to file an appeal. Id. at 61. They also discussed ineffective assistance of counsel and Pearson told Muse that he had not waived that motion in his plea agreement and that he

9

could file such a motion when he arrived at the BOP. Id. Pearson took no further legal action on Muse's behalf. Id. at 61-62.

That same day, Pearson wrote a memo to his file stating that Muse had asked him about filing an appeal. Pearson explained that he had waived the right to an appeal but if Muse wanted to note an appeal, Muse could contact the Clerk. Pearson noted that Muse said he disagreed with the relevant conduct drug weight and Pearson told him that if he challenged it via a collateral attack and prevailed, he would "just start over again." Pearson added that he made sure Muse understood that all of the actions would jeopardize the 5K reduction he received. Memo to file, ECF No. 88-2.

Pearson agreed that although he told Muse that if he appealed and won, he would be back at square one, that there are different ways to win an appeal and not all result in a defendant being forced to go back to the beginning of the prosecutorial process. Evid. Hr'g Tr., ECF No. 112 at 78-79. Pearson also testified that he did not think Muse had a meritorious appeal. Id. at 79. Pearson stated that he did not know why he told Muse that if he decided to file an appeal that Muse should contact the Clerk's office, rather that contact Pearson. Id. at 82. Pearson agreed that neither in his memo to his file nor in any letter to Muse did he state that Muse had not directed him to file an appeal. Evid. Hr'g Tr.; ECF No. 113 at 4. He added that if asked to file the appeal he would have called the Clerk's office for assistance on how to do so because he had never filed a notice of appeal in federal court. Id. at 6.

Pearson received several calls from women on behalf of Muse and they were asking about his classification at USP Big Sandy. On December 8, 2017, Pearson wrote to Muse to address his questions about his classification and told him that he did not have any pending

charges. Letter of Dec. 8, 2017, ECF No. 88-3. Pearson testified that the letter was returned to him and he resent it on December 19, 2017. Evid. Hr'g Tr., ECF No. 112 at 63.

Pearson testified that he did not hear from Muse again until almost a year later in December 2018, when he received a letter from Muse asking Pearson to call him at FCI Beckley because he had something important to talk to him about. In the letter, Muse added that he had written Pearson several previous letters and had not received a response. Id. at 64; Letter of Dec. 10, 2018, ECF No. 88-4. Pearson testified that he tried to call Muse at FCI Beckley but could not get through. Evid. Hr'g Tr., ECF No. 112 at 65. On January 8, 2019, Pearson responded to the letter from Muse, telling him that he had been unable to reach him by telephone and asking Muse to call him at his office. Letter of Jan. 8, 2019, ECF No. 70-2.[6] Pearson testified that he thought Muse might have additional information that would result in an additional reduction of his sentence and wanted to help him to secure a reduction. Evid. Hr'g Tr., ECF No. 112 at 64.

## IV.

### A. Notice of Appeal

The court must first determine whether Muse directed Pearson to file a notice of appeal on his behalf. Filing a notice of appeal is a "purely ministerial task that imposes no great burden

---

[6] Pearson added, "By the way, I have received a copy of your written complaints to the Judge about me. Based on the feelings expressed in the letter, I am a little shocked that you would now want to tell me anything. Also, I have responded to your prior letters, but both of my letters to you were returned to me." Letter of Jan. 8, 2018, ECF No. 70-2. The court notes that Pearson's reference to Muse's "prior letters" is inconsistent with his testimony that he did not hear from Muse from December 2017 until December 2018. Pearson testified that he may have been confused when he wrote the letter and that he may have only received the letter that he wrote in December 2017 that was returned to him and that he then resent. Evid. Hr'g Tr., ECF No. 112 at 66. The court further notes that when Pearson read the letters addressed to the court in which Muse stated that he asked his attorney to file an appeal and had heard nothing further from him, Pearson could have contacted him and clarified that he did not file the appeal.

on counsel." <u>Flores-Ortega</u>, 528 U.S. at 474. It typically takes place during a compressed period of time and the defendant likely will not have important documents from the trial court and may well be in custody, making communication with counsel difficult. <u>Garza</u>, 139 S.Ct. at 745. Filing requirements are simple, reflecting that claims are likely to be ill-defined or unknown at this stage. <u>Id.</u> The defendant has the authority to decide whether to file a notice of appeal, while appellate counsel decides what specific arguments to make. <u>Id.</u> at 746. "In other words, filing a notice of appeal is, generally speaking, a simple, nonsubstantive act that is within the defendant's prerogative." <u>Id.</u>

Muse testified that he told Pearson that he wanted him to file an appeal and he believed that Pearson was going to file a notice of appeal on his behalf. Evid. Hr'g Tr., ECF No. 112 at 11, 50. In a declaration attached to his § 2255 petition, Muse gave the same information that he gave at the evidentiary hearing, stating that during their video visit, he asked Pearson to file a notice of appeal on his behalf and Pearson agreed to do so. Decl. of Brian Muse, ECF No. 70-2 at 2.

Pearson agreed that Muse asked him about filing an appeal, but Pearson advised Muse against doing so because he had waived the right to appeal and added that if Muse wanted to note an appeal Muse could contact the Clerk to do so. Evid. Hr'g Tr. at 81-82; ECF No. 112 at 81-82. In an affidavit, Pearson stated that after Muse asked him about an appeal, they discussed the fact that he waived the right to appeal and that he might lose the benefits he received at sentencing, adding, "After this discussion, he did not direct me to appeal." Affidavit of Stuart Pearson, ECF No. 88-1.

In <u>Garza</u>, the Court held that if a defendant tells his attorney that he wishes to file a

notice of appeal, the attorney provides ineffective assistance if he fails to file the notice, even

if he believes that the defendant waived the right to appeal. <u>Id.</u> at 743, 746.

> While we do not address what constitutes a defendant's breach of an appeal
> waiver or any responsibility counsel may have to discuss the potential
> consequences of such a breach, it should be clear from the foregoing that simply
> filing a notice of appeal does not necessarily breach a plea agreement, given the
> possibility that the defendant will end up raising claims beyond the waiver's
> scope. And in any event, the bare decision whether to appeal is ultimately the
> defendant's, not counsel's, to make. See [McCoy v. Louisiana, 584 U.S., ——,
> ——, 138 S.Ct. 1507, 1508 (2018)]; [Jones v. Barnes, 463 U.S. 745, 751 (1983)].
> Where, as here, a defendant has expressly requested an appeal, counsel performs
> deficiently by disregarding the defendant's instructions.

<u>Id.</u> at 746.

In Muse's case, it is undisputed that at the very least he asked Pearson about filing a

notice of appeal. However, it appears that Pearson and Muse had a misunderstanding about

whether they had agreed that Pearson would file the notice of appeal. Muse believed they had

an agreement to do so while Pearson believed that Muse had decided against filing the notice

of appeal. Under these facts, the court finds that the interests of justice are best served by

finding that Muse asked Pearson to file an appeal on his behalf. To be clear, the court does

not find that Pearson testified in an untruthful manner about what happened. To the contrary,

Pearson testified credibly that after he and Muse spoke, he believed that Muse no longer was

interested in pursuing the appeal. But Muse testified just the opposite—that he thought

Pearson had agreed to appeal. Plainly, there was a misunderstanding. In short, both Muse and

Pearson thought they had an agreement about would happen next in terms of the appeal, but

there was no meeting of the minds. Because the law is clear that an attorney has a duty to file

a notice of appeal when a defendant asks him to do so, and because Muse believed that

13

Pearson had agreed to file the appeal on his behalf, the court makes the finding that Muse asked Pearson to file the appeal on his behalf and believed that Pearson was going to do so.

**B. Due Diligence**

Muse did not file his § 2255 motion alleging ineffective assistance of counsel before the expiration of one year from the time the judgment became final. Muse asserts that under 28 U.S.C. § 2255(f)(4), the one-year limitation period should run from the date he discovered that Pearson did not file an appeal. Because a defendant is only entitled to use the later start date set out in § 2255(f)(4) if he has acted with due diligence, the court must next determine whether Muse exercised due diligence from November 10, 2017, the last day for filing the appeal, until he learned that his attorney had not filed the appeal, at some point in the summer of 2018.

The test under § 2255(f)(4) is objective, requiring that the court determine when a duly diligent person in the petitioner's circumstances would have discovered that his attorney had not filed a notice of appeal on his behalf. Hannigan, 131 F.Supp.3d at 488 (citing Wims, 225 F.3d at 186). Although the test is objective, the due diligence inquiry is individualized. The court looks at "the prisoner's conditions of confinement, a prisoner's ability to communicate with court and counsel, and communications between the prisoner and the prisoner's counsel and between the prisoner and the court." Id. Due diligence does not require maximum feasible diligence, but only reasonable diligence. A petitioner need not exhaust every imaginable option but should make reasonable efforts. United States v. Longshore, 644 F.Supp.2d 658, 661 (D. Md. 2009) (citing Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) and Wims, 225 F.3d at 190 n.4).

14

Muse argues that he did not learn that his attorney had not filed the appeal until July 2018. The government points out that in December 2017 Muse wrote to the court to inquire about a lawsuit he filed under 42 U.S.C. § 1983 and asked for a § 2255 form. ECF No. 11 in <u>Muse v. Hudgens</u>, No. 7:17-cv-497 (W.D. Va. dismissed Jan. 2, 2018). When asked at the hearing about requesting the form, Muse testified that another inmate had told him that he should have the form "just in case." He said he did not have any reason for obtaining the form at that time, but that inmates doing their own legal work often have the § 2255 forms and he wanted to try to understand the contents of it. Evid. Hr'g Tr., ECF No. 112 at 41. When asked why he did not at that time ask the district court about whether his attorney had filed an appeal in his case, he answered that he was giving Pearson time because Pearson had told him the appeal would take months. <u>Id.</u> at 43.

The government argues that Muse's explanation for requesting the § 2255 form is not credible and that he must already have known that Pearson had not filed the appeal and was contemplating filing a § 2255 motion. The government further argues that Muse must have relayed his doubts about the appeal to the inmate who was helping him, and due diligence required him to have taken steps at that point to ascertain whether the appeal had been filed. However, the government's argument is based on conjecture and speculation. Nothing in the record contradicts Muse's explanation for why he requested a § 2255 form in December 2017 and there is no evidence that he shared any concerns he might have had with another inmate. To the contrary, his failure to mention the appeal in the December 2017 letter is consistent with his testimony that he believed his attorney had filed the appeal and also consistent with

15

his later letters to the court stating that he had asked Pearson to file the appeal. ECF Nos. 65, 66, 68.

The government also points out that in January 2018 Muse wrote Pearson a letter stating, "I know that my case is over and you are done with me," and argues that this letter shows that Muse knew Pearson had not filed an appeal on his behalf. However, at the hearing, Muse stated that he had written to Pearson about several issues, but Pearson had only responded to a question Muse had raised about whether he had other pending charges. Evid. Hr'g Tr., ECF No. 112 at 20. He said that when he said, "you are done with me," he meant that Pearson did not want to do anything else for him. Id. When the phrase, "you are done with me" is read in the context of the entire letter, it does appear that Muse is wanting to discuss where he is housed and does not appear to be discussing his appeal:

> I appreciate the letter that you sent me but I wish you had sent it to my counselor. If you could call up here and settle it with B-unit case manager Mrs. Webb it would hold up a lot more. I know that my case is over and you are done with me but you are the only one who can get me through this and it would not go unappreciated. It would help me to get out of a USP and into an FCI, especially since it was a mistake in the first place. See this all stems from a mistake on my pre-sentence report (PSI) stating that I had "unresolved" charges and which in reality was never true which we both know. Remember that conversation we had about it affecting my placement along with my GED not being verified? Well it definitely happened and now I'm sitting in one of the worst prisons in America where people want to see my paperwork and if I don't get it or if I do get it and have a 5K1 then they will have me killed! I just seen someone get killed a month ago over the same thing and we are just getting off lockdown for it. I'm just trying to get off of the maximum security list because the only reason I'm here is for a mistake I have no control over! I asked about this before I got sentenced. I know I might have been asking a lot of you during my trial but I will ask of you. I wish you could have done a better job covering up the 5K1 and stuff I done but that's neither here nor there and I am focusing on the situation on-hand. Thanks in advance!

Letter dated Jan. 2, 2018, ECF No. 108-3 (edited for clarity). Thus, this letter does not provide

support for the government's argument that Muse knew in January 2018 that his attorney had

not filed the appeal.

　　Muse wrote to the district court on July 11, 2018, ECF No. 65, requesting assistance in

filing a §2255 motion. He stated, "I have several reasons for taking this motion because I asked

[my attorney] to appeal the guidelines in my pre-sentence report because there were a lot of

errors in my pre-sentence report and I haven't heard anything from him about it yet." Id. at 1.

He also stated in the letter that his "points" were not properly calculated and when he asked

his attorney to fix it, the attorney "walked out on [him.]" Id. at 2. He further stated that he

was unjustly sentenced due to the miscalculation of the points and that his lawyer "failed to

address the issue." Id. The statements in the July 2018 letter indicate that, at the very least,

Muse was questioning whether his attorney had filed the appeal. The clerk's office sent Muse

a blank § 2255 form. Id.

　　On September 12, 2018, the Clerk's office received another letter from Muse in which

he stated, "I am writing the courts to find out why I asked my lawyer to appeal my conviction

and I never heard back from him and every time I try to reach out to him he never responds.

. . . I was sent [a] 2255 form by the courts last time I wrote the courts and it does me no good

because I don't know how to go about filling it out 'legibly' and if I do anything wrong I won't

get a second chance and I clearly need assistance and can't get [it] up here so I am asking to

get some kind of help with it." ECF No. 66 at 4. He further stated, "I asked my lawyer to

appeal the fact that my PSR was full of errors and he walked out on me, and then did a video

visit two days later to tell me he didn't think I could do it, but he would and I would like to

know if an appeal was ever filed on my behalf. I have a deadline to file this 2255 form, so I
need this done in a timely fashion." Id. at 2-3.

The clerk's office responded by mailing Muse a copy of the docket sheet in his case
and advising him that the clerk's office is not permitted to provide legal information. ECF No.
67. The docket sheet contained no indication that an appeal had been filed.

On April 12, 2019, Muse wrote another letter to the court, asking for copies of letters
he had sent the court and his docket sheet. He said that he had contacted the appeals court,
the public defender's office, and his own attorney and had received no response from any of
them. He stated that four days after he was sentenced, he asked his attorney to file an appeal
on his behalf but did not hear from him, even though he had written him several letters. He
concluded by saying that only after the court sent him a copy of his letter asking what was
happening with his appeal did the attorney respond to him. Letter of April 12, 2019, ECF No.
68. The clerk's office replied to him the same day, telling him that he was being sent a docket
sheet from his case, but would need to specify what documents he wanted and pay for copies.
ECF No. 69.

Based on the foregoing, the record indicates that Muse suspected prior to July 26, 2018
that his attorney had not filed an appeal on his behalf and knew no later than mid-September
2018, when the clerk's office sent him a copy of the docket sheet in his case, that an appeal
had not been filed. See Greer v. United States, No. 5:14-CR-00202, 2019 WL 7559790, at *8
(S.D.W.V. 2019) (finding that petitioner had notice that attorney had not filed an appeal when
he received docket sheet showing that, other than the filing of the PSR, nothing had occurred
in the case between entry of judgment and execution of judgment).

The question remains whether Muse exercised due diligence from November 2017 through July 2018. Due diligence "is an inexact measure of how much delay is too much." Johnson v. United States, 544 U.S. 295, 309 n. 7 (2005). In Ryan v. United States, 657 F.3d 604, 607 (7th Cir. 2011) the court commented, "No rule of thumb emerges from the cases on how long prisoners may take to discover their lawyers' missteps, and we hesitate to pick a magic number."

Some courts have found that delays of two to five months before inquiring about the status of an appeal are reasonable. See Ryan, 657 F.3d at 608; Granger v. Hurt, 90 F. App'x 97, 100 (6th Cir. 2004); Wims, 225 F.3d at 191; Powell v. United States, No. 1:12CR348-1, 1:13CV1052, 2015 WL 3440830 at *5, n.7 (M.D.N.C. May 28, 2015); McKiver v. United States, No. 1:12CR71-1, 1:13CV1091, 2015 WL 1243298, at *4 (M.D.N.C. Mar. 18, 2015). Other courts have found that a year-long delay in inquiring about an appeal is reasonable. See Ragin v. Clarke, No. 3:18CV367, 2019 WL 332804, at *3 (E.D. Va. Jan. 25, 2019); Hollway v. Walrath, No. 3:17CV683-HEH, 2018 WL 2452955, at *3 (E.D. Va. May 31, 2018); Tharrington v. Director, Va Dept. of Corrections, No. 3:14CV720, 2015 WL 4606174, at *4 (E.D. Va. July 30, 2015).

Conversely, at least one court found that a two-and-a-half-month delay in inquiring about the status of an appeal was too long. See United States v. Proctor, No. 3:17CR57-HEH, 2021 WL 4524175, at *2 (E.D. Va. Oct. 1, 2021). Other courts have found that eight-month, ten-month, and twelve-month waits are too long. See Anjulo-Lopez, 541 F.3d at 818-19; Montenegro v. United States, 248 F.3d 585, 589 (7th Cir. 2001), overruled on other grounds

by <u>Ashley v. United States</u>, 266 F.3d 671, 674-75 (7th Cir. 2001)); <u>Hairston v. United States</u>, No. 4:05cr00022-1, 2008 WL 4809165 (W.D. Va. Nov. 4, 2008).

Muse took eight months to determine that Pearson had not filed the appeal on his behalf. Looking at Muse's conditions of confinement and his communications with Pearson and the courts, <u>Hannigan</u>, 131 F.Supp.3d at 488, the court first notes that if the appeal had been filed in November 2017, it could reasonably have been expected to pend for at least a few months. <u>Elder v. Clarke</u>, No. 7:13CV00500, 2014 WL 4407563, at *4 (W.D. Va. Sep. 8, 2014). In addition, Muse testified that Pearson told him that the appeal would take months. If a duly diligent person waited two or three months before starting his inquiry, he would have begun to try to figure out what happened in January or February 2018. Muse testified that he was under lockdown until approximately May 2018, but in his letters to the court and his testimony at the evidentiary hearing, he indicated that at some point he wrote letters to Pearson asking about the appeal and also wrote a letter to the Fourth Circuit Court of Appeals to inquire about the appeal but received no responses to his inquiries.

Muse next wrote to the district court in July 2018, indicating that he still was unclear about whether his attorney had filed an appeal on his behalf. ("I have several reasons for taking this motion because I asked him to appeal the guidelines in my pre-sentence report because there were a lot of errors in my pre-sentence report and I haven't heard anything about it yet.") Letter of July 11, 2018, ECF No. 65. The Clerk responded by sending him a § 2255 form. He wrote again in September 2018, still indicating he did not know if the appeal had been filed. ("I am writing the courts to find out why I asked my lawyer to appeal my conviction and I

never heard back from him and every time I try to reach out to him he never responds.")
Letter of Sept. 12, 2018, ECF No. 66.

The record shows that Muse began to make efforts to ascertain whether the appeal had been filed within at least eight months and likely several months earlier of when he had asked Pearson to file it. When Muse received no response from Pearson, he contacted both the court of appeals and the district court. The court finds that based on Muse's efforts and given the limitations he faced while being on lockdown and being transported between facilities, and the difficulties he alleges to have experienced with mail delivery, Muse acted with reasonable diligence to discover the facts necessary for his claim that Pearson provided ineffective assistance of counsel by failing to file the notice of appeal. Whether Muse learned about the failure to file the notice of appeal in July or September 2018, his § 2255 petition, filed on June 17, 2019, was timely.

## V.

Based on the foregoing, the court **GRANTS** Muse's motion for relief under § 2255. Muse may file a belated notice of appeal with this court within **fourteen (14) days** from entry of this order.

An appropriate Order will be entered.

Entered: *12/ 9/20 21*

Michael F. Urbanski
Chief United States District Judge