CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
May 07, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 7:17-cr-00011-1 |
| ) | |
| v. ) | |
| ) | |
| ) | |
| BRIAN DOMINIQUE MUSE, ) | By: Michael F. Urbanski |
| ) | Chief United States District Judge |
| Petitioner ) | |

## MEMORANDUM OPINION

Pending before the court is Brian Dominique Muse's petition for relief filed pursuant to 28 U.S.C. § 2255. ECF No. 148. The government filed a motion to dismiss the petition. ECF No. 152. For the reasons discussed below, the court **DENIES** Muse's petition and **GRANTS** the government's motion to dismiss.[1] The court finds that a hearing is not necessary to resolve the issues in this case as it is clear that Muse is not entitled to relief. See 28 U.S.C. § 2255(b) (providing that "if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court may deny the petition without holding a hearing); Rule 4(b), Rules Governing Section 2255 Proceedings ("If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.")

---

[1] Approximately one month after filing his § 2255 motion, Muse was released from custody to serve a three-year term of supervised release. Although he is not incarcerated, "[a] person on supervised release is considered to be 'in custody' for purposes of a § 2255 motion." United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999).

## I. Background

On February 2, 2017, Muse was indicted on charges of possession with intent to distribute a mixture containing a detectable amount of heroin (Count One); possession with intent to distribute a mixture containing a detectable amount of cocaine (Count Two); possession with intent to distribute a mixture containing a detectable amount of cocaine base (Count Three), all in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four); and possession of a firearm after having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count Five). Indictment, ECF No. 3.

On May 30, 2017, Muse entered into a written plea agreement in which he agreed to plead guilty to Counts One and Four of the indictment. Counts Two, Three, and Five would be dismissed. Plea Agreement, ECF No. 41 at 1-3. Muse faced maximum statutory sentences of 20 years on Count One and life on Count Four, with a mandatory consecutive minimum sentence of 5 years on Count Four. Id. at 1-2. According to the Presentence Investigation Report (PSR), based on the plea agreement which garnered Muse a 3-level reduction for acceptance of responsibility, his United States Sentencing Guidelines range on Count One was 57 to 71 months. On Count Four, the guidelines range was 60 months, the minimum term of imprisonment imposed by statute. PSR, ECF No. 61 ¶ 153. Thus, his guidelines sentencing range was 117 to 131 months under the plea agreement. Without the plea agreement and the reduction for acceptance of responsibility, his sentencing range on Count One would have

been 77 to 96 months, making his total guidelines sentencing range 137 to 156 months. Id. ¶ 154.

The guidelines sentence on Count One was calculated based on drug weight of 93.6 grams of heroin. The United States Probation Office explained how it arrived at that drug weight:

> On June 30, 2016, [Westley] Richardson was interviewed and provided investigators with the names of numerous individuals who were involved in buying or selling drugs including Muse. Richardson stated that Muse purchased a brick of heroin and an eight-ball (3.5 grams) of crystal methamphetamine approximately three times per week, and dealt with Muse for the past six to eight months.
>
> The amount of drugs found in the possession of Muse at the time of his arrest has a marijuana conversion of [3.6] kilograms. However, based upon the defendant's admission and relevant conduct, he is responsible for at least one to two bundles of heroin three to four times per week for at least two years (1 bundle or .3 gram three times per week for two years or .9 x 104 weeks = 93.6 grams of heroin), but he also indicated he purchased up to three to four bricks on occasion. However, Richardson claimed that Muse purchased a brick (1.5 grams) of heroin and 3.5 grams of actual methamphetamine (ice) for the past six to eight months. In a light most favorable to the defendant, guideline calculations reflect that Muse is responsible for the minimal amount he admitted to in his interview to investigators.

Id. ¶¶ 11, 12.

On October 25, 2017, the court sentenced Muse to 27 months on Count One and 60 months on Count Four, for a total of 87 months, to be followed by a 3-year term of supervised release. J., ECF No. 58 at 2–3. The court departed downward from the guidelines sentencing range based on the government's motion for substantial assistance under USSG § 5K1.1. Sent. Hr'g Tr., ECF No. 84 at 15. No notice of appeal was filed. On November 22, 2017, an

3

amended judgment was entered for the purpose of correcting the spelling of Muse's middle name. Am. J., ECF No. 62 at 1.

Muse filed a previous § 2255 motion on June 26, 2019, and argued that his attorney provided ineffective assistance of counsel because he failed to file an appeal even though Muse directed him to do so. ECF No. 70. The parties briefed the issues and the court held a hearing over two days in 2020. The court concluded that Muse asked his attorney to file a notice of appeal on his behalf and the attorney failed to do so. Mem. Op., ECF No. 139. The court granted Muse's motion to vacate and allowed him to file an out-of-time appeal. Order, ECF No. 140. Muse filed an appeal with the Fourth Circuit Court of Appeals, but later moved to voluntarily dismiss the appeal. ECF Nos. 141, 145.

Muse filed his current petition to vacate his conviction on March 9, 2023, arguing that his attorney provided ineffective assistance of counsel when he did not object to the drug weight for which Muse was held responsible at sentencing. Mot., ECF No. 148. The government filed a motion to dismiss Muse's petition on April 17, 2023, arguing that the record in Muse's case supports the court's conclusion that he was responsible for distributing 93.6 grams of heroin, the drug weight on which his guidelines sentence was calculated.

## II. Applicable Law

### A. 28 U.S.C. § 2255

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28

4

U.S.C. § 2255(a). A petitioner collaterally attacking his conviction or sentence via a § 2255 petition bears the burden of showing by a preponderance of evidence that he is entitled to relief. White v. United States, 352 F.Supp.2d 684, 687 (E.D. Va. 2004) (citing Miller v. United States, 261 F.2d 546 (4th Cir. 1958), and Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967)).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland, 466 U.S. at 669.

When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008) (quoting Strickland, 466 U.S. at 688) ("The performance of counsel is measured in terms of 'reasonableness under prevailing professional norms.'") The court must judge counsel "on the facts of the particular case," and assess counsel's performance "from counsel's perspective at the time." Strickland, 466 U.S. at 689.

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; see also United States v. Mayfield,

5

320 F. App'x 190, 191 (4th Cir. 2009) (applying prejudice standard to claim of ineffective assistance at sentencing.)

### III. Analysis

Muse argues that his attorney provided ineffective assistance when he failed to object to the 93.6 grams of heroin calculated as the relevant drug weight in the PSR and failed to argue that his guidelines sentence should be much lower. He claims that had his attorney objected to the drug weight calculation, there is a reasonable probability that Muse's sentence would have been substantially shorter. In support of his argument, Muse calls the court's attention to three alleged errors by the attorney.

First, Muse argues that his statement regarding his relationship with Westley Richardson, from whom he regularly bought drugs, was "unreliably recorded by police." Mot., ECF No. 148 at 6. Muse is referring to the following paragraph from the PSR:

> According to the investigation, Muse stated in his interview with investigators on April 19, 2016, that he had known Richardson for seven to eight years, but Muse had been purchasing heroin on and off from Richardson for approximately 10 years. Muse said he had previously purchased approximately one to two bundles of heroin and up to three to four bricks of heroin at a time on a weekly basis from Richardson. Muse further stated he was fronted approximately 3.5 grams of methamphetamine one time from Richardson.

PSR, ECF No. 61 ¶ 10.

Although the statement that Muse had known Richardson seven or eight years but had bought heroin from him for ten years is internally inconsistent, it does not lead to the conclusion that Muse's counsel was ineffective for failing to object to the PSR calculation that Muse was responsible for 93.6 grams of heroin. It is unclear whether Muse made the

6

inconsistent statement, or whether he said something else and the law enforcement investigator recording the statement erroneously wrote down what he said, or whether the probation officer made an error in repeating what Muse told investigators. More importantly, the internally inconsistent statement is irrelevant to the drug weight calculation. The calculation was not based on ten years of drug transactions, or seven years of drug transactions, but on only two years of Muse buying drugs from Richardson. The PSR calculated that Muse had purchased at least one to two bundles of heroin, with 1 bundle containing .3 grams of heroin, three to four times per week for at least two years. Although Muse also stated that he purchased up to three or four bricks of heroin on occasion, with a brick containing 1.5 grams of heroin, the probation office used the smaller quantity to calculate the drug weight. Id. ¶ 12. Therefore, although it is unclear from the statement in paragraph 10 of the PSR whether Muse knew Richardson and bought drugs from him for only seven years or for ten years, the statement has no bearing on the drug quantity calculation, which contemplated that Muse bought drugs from Richardson for two years.

Second, Muse asserts that the PSR estimate was unreliable because when Muse was arrested, he had only a small quantity of heroin on his person and the total amount of drugs found on his person was the equivalent of a total marijuana conversion of 3.6 kilograms. Mot., ECF No. 148 at 7. This argument is puzzling, because the drug weight was not calculated based on the quantity of drugs found on Muse, but on his statement to investigators that he had previously purchased approximately one to two bundles of heroin and up to three to four bricks of heroin at a time on a weekly basis from Richardson, and Richardson's corroboration

7

of that statement. Id.[2] Because the probation office did not rely on the quantity of drugs that Muse had on his person at the time of arrest to calculate the drug weight, but instead relied on his statement and Richardson's statement, Muse's argument based on the quantity of drugs found on his person at the time of arrest is unavailing.

Third, Muse argues that the calculated drug weight did not account for his personal drug use, and that his attorney was ineffective for failing to make that argument. In United States v. Freeman, 24 F.4th 320, 327–28 (4th Cir. 2022), the court held that a defendant's attorney provided ineffective assistance when he failed to object to the drug quantity in the PSR on several grounds, including failing to object to the fact that the drug weight calculation did not include the quantity of drugs attributed to the defendant's personal use.

However, the facts underlying Freeman's case are quite different from those underlying Muse's case. Freeman's arrests and convictions were related to her falsifying prescriptions for opioids to which she was addicted. Freeman sold opioid pills and also used them herself. Id. at 323. Freeman was arrested in 2016 and transported to a hospital where she tested positive for opioids. While at the hospital, she was interviewed by law enforcement officers and stated that in a good week she would fill twenty-one forged prescriptions and in a bad week she would fill about seven. Id. Freeman was indicted and pled guilty to possession with intent to distribute hydrocodone and oxycodone between October 2014 and October 2016. Id.

---

[2] Richardson told investigators that Muse had bought a brick of heroin (1.5 grams) and an eight-ball of crystal methamphetamine (3.5 grams) approximately three times per week for the previous six to eight months. If the probation office had calculated the drug weight based on Richardson's testimony, the drug calculation would have been 108 grams (1.5 grams x 3 times per week x 24 weeks).

8

After pleading guilty and while awaiting sentencing, Freeman spoke to a law enforcement agent in 2017 as part of making a standard proffer. Id. at 323. She stated that during the relevant period she was filling one forged prescription for opioids four or five times per week, and occasionally four or five prescriptions in a single day. Each prescription contained 120 10 mg hydrocodone pills, which was equal to Freeman selling 52,000 pills to her buyer over a two-year period, Id., or the equivalent of 3,484 kilograms of marijuana. USSG 2D1.1, comment. (n.8(d)). A defendant found responsible for more than 3,000 but less than 10,000 kilograms of marijuana has a base offense level of 32. USSG § 2D1.1(e)(4).

No plea agreement was reached and while Freeman was out on bond awaiting sentencing, she was placed on location monitoring after failing a drug test. At sentencing, and as reflected in the PSR, the probation officer used the statement Freeman gave while hospitalized for opioid use in 2016 that she had filled approximately twenty-one prescriptions on a good week and seven on a bad week. Id. at 324. The probation officer estimated that Freeman had successfully filled one prescription per day every day for two years, which made her responsible for distributing 87,600 hydrocodone pills, resulting in a base offense level of 32. Id. The PSR calculation did not reduce the number of pills to account for Freeman's personal use. Id.

Although represented by counsel at the sentencing hearing, Freeman herself raised questions to the district court about the drug weight assessed in her PSR. Id. She also told the court that she had been unable to contact her attorney until shortly before the hearing and she disagreed with her attorney about how to proceed on the case. Id. As a result, the court continued the hearing to allow Freeman to hire another attorney and noted that the

9

government could revisit the calculated drug weight based on the information in Freeman's 2017 proffer. Id. The probation officer then revised the PSR but did not base the revision on the proffer as suggested by the court, but once again on the statement Freeman made while she was hospitalized and testing positive for opioids. In the revised calculation, the probation officer estimated that Freeman filled two prescriptions of 120 10 mg pills daily, rather than one, which amounted to 175,200 pills, or double the number of the pills for which the officer found her responsible in the original calculation. The revised calculation raised her base offense level from 32 to 34. Once again, the officer did not account for the number of pills that went to Freeman's personal use. Id.

Freeman's new attorney initially filed objections to the drug weight calculated in the PSR, but then waived the objections at the sentencing hearing, "apparently to Freeman's surprise." Id. at 325. Her attorney told the court he was waiving the objections because they might be seen as "minimal," would not "'take [ ] away from the vast number of pills that the Government was accusing her of dispersing or acquiring,'" and would not "'reduce the number that is relevant to this [c]ourt.'" Id. When asked if she agreed with waiving the objections, Freeman said she was not sure, but after consulting with her attorney agreed to the waiver. Id.

Freeman's attorney asked the court to allow her to enter a drug diversionary program, although he had very little understanding of how the program worked. The court denied the motion to enter the program and sentenced Freeman to 210 months, which was the low end

of the guidelines range based on the final offense level of 36 recommended in the PSR. Id. at 325–26.³

Freeman filed a pro se notice of appeal, and the Fourth Circuit vacated her conviction and remanded her case to the district court after finding that Freeman's attorney was "unequivocally wrong" on the law when he waived the objections to the PSR because the objections did not "reduce the number" that was relevant to the court. Id. at 326–27. The court found that if the objections had been successful, they would have reduced the low end of Freeman's guidelines range by almost ten years. Id. at 327. Had the PSR based the drug weight on Freeman's description in the 2017 proffer of the number of opioid prescriptions she forged, her base offense level would have been 32. Instead, the PSR used the 2016 statement Freeman made to investigators while she was hospitalized and used the high number she estimated (filling and selling two prescriptions per day) rather than the low number she estimated (filling and selling one prescription per day), with the result that her base offense level was 34. The court further found that with two exceptions, the discovery that the government provided to defendant showed that she filled only one prescription per day. Id.

The court also noted that the PSR did not account for Freeman's personal opioid use, which she reported as 60 to 80 pills per day during the relevant period. Id. at 328. The court

---

³ Freeman's attorney also failed to object to a 2-level enhancement for "obstruction of justice" based on Freeman's move from South Carolina to North Carolina while on bond. Freeman testified that she and her family moved to a new location 40 miles away after they were evicted, and the record showed that she did not miss any court dates during the relevant period. Freeman, 24 F.4th at 323–24, 328. Additionally, because of the obstruction enhancement, Freeman effectively lost the opportunity to receive a downward adjustment for acceptance of responsibility, because with few exceptions, "[c]onduct resulting in an enhancement [for obstruction of justice] indicates that the defendant has not accepted responsibility for his criminal conduct." Id. at 328 (citing USSG § 3E1.1, comment. (n.1)).

11

concluded that Freeman's counsel provided ineffective assistance when he waived a strong argument he could have made that her drug weight calculation should have been reduced. Id.

Muse's case is distinguishable from Freeman. Muse pled guilty pursuant to a plea agreement and on the same day he signed the plea agreement, he signed a proffer, or Statement of Facts ("SOF"), where he confirmed that he told investigators that he sold drugs to support his drug habit and that he bought anywhere from one to two bundles and up to three or four bricks of heroin per week from Richardson. SOF, ECF No. 43 at 2. At the plea hearing, Muse testified that he sold drugs to support his drug habit. Tr. of Guilty Plea Hr'g, ECF No. 79 at 29–34. Muse stated that the drugs found on his person the day he was arrested were for his personal use and that he had been buying drugs from Richardson to support his habit. Id. at 31.

The court asked the prosecutor how she was going to prove that Muse possessed the drugs with the intent to distribute them if his testimony was that the drugs were for personal use, and the prosecutor said that it was the first time she had heard such information and if that was his testimony, the parties would need to resume negotiations. Id. at 32. Muse then told the court that he was going to sell some of the drugs found on his person to buy other drugs, some of which he would sell and some of which he would keep for his personal use. The court asked Muse if it was his habit to sell some of his drugs to get more drugs for his personal use and Muse agreed that it was. Id. at 33–34.

Although the PSR did not factor in Muse's personal use when calculating the drug weight in his case, based on Muse's testimony and the signed SOF, the court had before it evidence that part of the drugs that Muse bought were for his personal use. Muse's attorney's

12

failure to object to the drug weight based on Muse's personal use of some of the drugs was not ineffective assistance because the court had information about his personal drug use when it calculated Muse's sentence under the guidelines. See Davidson v. United States, No. 7:11-CR-00044, 2013 WL 1651776 at *2 (W.D. Va. April 16, 2013) (Conrad, J.) (finding counsel was not ineffective for failing to argue diminished mental health qualified him for a downward departure when defendant testified about his history of mental and emotional problems, thus informing the court of his mental condition).

Also, unlike in Freeman's case, the PSR relied upon the signed SOF for the drug calculation, rather than a statement made to law enforcement officers in the hospital while possibly under the influence of drugs. The prosecutor read the SOF into the record, including that Muse had told investigators that he had been buying "anywhere from one to two bundles, up to three—and all the way up to three to four bricks per week" from Richardson, and Muse did not dispute those facts although he was given an opportunity to do so. Tr. of Guilty Plea Hr'g, ECF No. 79 at 30–31.

Another difference between Freeman and Muse is that Freeman appeared surprised when her attorney waived his objections to the drug quantity calculation and said she was "not sure" that she agreed to the waiver, although after consulting with her attorney she did agree to it. At the sentencing hearing in Muse's case, he responded "Yes, sir," when asked if he remained fully satisfied with the advice and representation provided by counsel. Tr. of Sent. Hr'g, ECF No. 84 at 2. The court calculated the base offense level as 22, based on 93.6 grams of heroin. Id. at 4. The court acknowledged that Muse was selling drugs to support his own habit. Id. at 11. After a discussion of Muse's criminal history and the substantial assistance

13

motion pending before the court, and after his attorney recommended to the court that Muse be sentenced to 12 months on the drug charge, the court asked Muse for information that would be helpful in fashioning an appropriate sentence. Id. at 5–12. Muse apologized for his behavior and asked to receive drug treatment while in prison. He did not object to the drug weight calculation, or otherwise indicate that he disagreed with the drug weight calculation. Id. at 13–15.

In sum, unlike in Freeman, the record before the court does not support a finding that Muse's attorney was ineffective for failing to argue that part of the drugs he bought were for his personal use. The court heard directly from Muse that he used some quantity of the drugs he bought and gave Muse an opportunity to provide other information that would have been helpful at sentencing. Muse did not quantify how much of the drugs he bought were for his personal use or question the probation officer's proposed guidelines calculation.

Additionally, even if Muse's attorney erred when he did not argue to the court that the drug quantity should be reduced based on Muse's personal use, "effective representation is not the same as errorless representation." Marzullo v. State of Md., 561 F.2d 540, 544 (4th Cir. 1977). "The Sixth Amendment guarantee of counsel does not guarantee an ideal or perfect representation." Mickens v. Taylor, 240 F.3d 348, 363 (4th Cir. 2001). In Muse's case, his attorney provided effective representation when he participated in plea negotiations that resulted in Muse receiving a three-level decrease in his offense level for acceptance of responsibility and in the government offering a thirty percent reduction in his overall sentence for acceptance of responsibility. See United States v. Conner, 456 F. App'x 300, 307 (4th Cir. 2011) ("Our review of the record makes clear that even if there were good arguments that

14

Kelly did not make, there were many good ones that he did make and indeed made effectively.") Based on the record as a whole, the court concludes that Muse's attorney provided constitutionally effective assistance of counsel during pre-trial proceedings and at sentencing. Muse's arguments to the contrary are without merit.

Finally, even if Muse had shown that his counsel's conduct fell below an objective standard of reasonableness, he has not demonstrated prejudice, i.e., that the outcome of the proceeding would have been different, or that he would have received a shorter sentence. See Hines v. United States, No. 3:20-cr-00669-FDW, 2024 WL 1662778, at *4 (W.D.N.C. Apr. 17, 2024) (citing Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999), in turn quoting Strickland, 466 U.S. at 694) ("When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a reasonable probability that his sentence would have been more lenient but for counsel's error.") (internal quotation marks omitted).

In support of his argument that he was prejudiced by his attorney's failure to object to the drug weight, Muse posits that if his attorney had made the objection, the court would have found that Muse was responsible not for 93.6 grams of heroin, but only for the very small quantity of drugs found on his person on the day he was arrested. Mot., ECF No. 148 at 7–8. This argument wholly ignores the statement in the SOF, signed by Muse, regarding the quantity of drugs he bought from Richardson over two years and Richardson's statement corroborating the quantity of drugs he sold Muse. The argument also assumes that had his attorney objected to the drug calculation, the court would have found that all the drugs Muse bought from Richardson were for his personal use. Muse's assertion of prejudice is conclusory and not supported by the record.

15

## IV. Conclusion

Based on the foregoing, the court **DENIES** Muse's petition for relief under § 2255, ECF No. 148, and **GRANTS** the government's motion to dismiss, ECF No. 152. Because Muse has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c) and Slack v. McDaniel, 529 U.S. 473, 484 (2000), a certificate of appealability is **DENIED**.

An appropriate Order will be entered.

Entered: *May 6, 2024*

Michael F. Urbanski
Chief United States District Judge